IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-08-2039-PHX-EHC (LOA) |
| Plaintiff/Respondent, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Jeanette B. Wilcher, | |
| Defendant/Movant. | |

This matter arises on Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (docket # 1)  Respondent has filed a Response. (docket # 5)  Movant has not replied and the deadline has passed.

**I. Procedural and Factual Background**

    **A. Procedural History**

On October 22, 2003, Movant was charged in the United States District Court, District of Arizona, with one count of wire fraud (Count 1), three counts of promotional money laundering (Counts 2-4), and three counts of transactional money laundering (Counts 5-7), in violation of 18 U.S.C. §§ 1343, 1956(a)(1)(A)(i) and 1957, respectively.  (CR 1[1])  A superseding indictment was filed on October 7, 2004.  (CR 56)  On Movant's motion, the district court severed Count 8, a wire fraud count, from the superseding indictment.  (CR 55)

---

[1] Citations to "CR __" are to the docket in the underlying criminal matter, *United States v. Jeanette Wilcher*, CR-03-1098-PHX-EHC.  Citations to "Tr. ___" are to the criminal trial transcript filed in CR-03-1098-PHX-EHC.

On the government's motion, Count 8 of the superseding indictment was subsequently dismissed without prejudice. (CR 255)

Movant's case proceeded to trial. On April 14, 2006 a jury found her guilty of Counts 1-7 of the superseding indictment. (CR 222) On November 13, 2006, the district court sentenced Movant to 92-months imprisonment. (CR 248, 249)

On November 16, 2006, Movant filed a timely notice of appeal. (CR 250) On August 29, 2007, the Ninth Circuit affirmed Movant's convictions and sentence. *United States v. Wilcher*, 239 Fed.Appx. 398 (9th Cir. 2007) (unpublished). On December 21, 2007, Movant filed a petition for *writ of certiorari* in the United States Supreme Court which was denied on February 26, 2008. (docket # 1)

Thereafter, Movant filed the pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (docket # 1) Movant presents the following claims: (1) ambiguous language in the money laundering statute pursuant to which she was convicted should be interpreted in her favor, in accordance with *United States v. Santos*, ___ U.S.___, 128 S.Ct. 2020 (2008); and (2) Movant was denied due process because the district court failed to give the jury a special verdict form directing that, in order to convict her of wire fraud, the jury must find that Movant specifically intended to defraud the victim, Ms.Gillaspie, rather than that she merely intended to defraud someone. (docket # 1 at 4-5)

**B.  Investment Fraud**

Movant's convictions for wire fraud and money laundering arise from her scheme to lure investors into her non-existent trading program in medium-term bank notes and her fraudulent use of investors' money. Movant enlisted Robert Ponikvar and J.D. Surber, through Ponikvar's investment company named Sansea, Ltd. ("Sansea), to locate investors for her program. (CR 283, Tr 4/6/06 at 210-14)*; United States v. Wilcher*, 2007 WL 1571205, appellee's opening brief. In January 1999, the victim, Connie Gillaspie, was introduced to Ponikvar and Surber by her nephew, Rex Allen, Jr. (CR 284, Tr. 4/7/06) Gillaspie was convinced to invest $3.3 million in Movant's program through Sansea, Ltd. (Tr. 4/6/06 at 217, 4/7/06 at 380) Ponikvar and Surber wired Gillaspie's $3.3 million to

1   Movant, who diverted $2,151,500 of Gillaspie's money for her own use.  (Tr. 4/6/06 at 228,
2   242; CR 286, Tr. 4/12/06 at 617-21, 633-36, 646-47)

### C.  Money Laundering

On January 25, 1999, after Sansea received Gillespie's $3.3 million investment, Sansea wired funds into Movant's LFT Lewco account.  (CR 283, Tr. 4/6/06 at 242)  Before Sansea wired Gillaspie's $ 3.3 million investment to Movant's Lewco account, Movant's account had a zero balance.  (CR 286, Tr. 4/12/06 at 617-18)  On January 27, 1999, Movant wired $1.5 million of Gillaspie's investment into her Wells Fargo bank account.  (CR 286, Tr. 4/12/06 at 617)  On February 9, 1999 and March 11, 1999, Movant drafted $500,000 in checks from the Lewco account made payable to herself or other entities under her control.  (CR 286, Tr. 4/12/06 at 620)  Monvant distributed Gillaspie's investment funds to her own bank accounts to pay credit cards and to purchase her Scottsdale, Arizona home out of foreclosure.  (CR 286, Tr. 4/12/06 at 620-21, 633-36, 646-47)  Movant kept $2,151,500 of Gillaspie's $ 3.3 million investment for her personal use.  (CR 286, Tr. 4/12/06 at 636-37)  Movant distributed approximately $1,713,000 to Sansea, falsely characterized as investment payments, who distributed payments to Gillaspie.  (Tr. CR 286, 4/12/06 at 627-30, 632, 637-38)  Specifically, Sansea distributed $752,000 to Gillaspie.  Other than the $752,000 paid to her, Gillaspie did not receive any other refund of her investment.  (CR 286, Tr. 4/12/06 at 637-38, 641-42)  Movant did not invest any of Gillaspie's $3.3 million in the investment program.  (CR 286, Tr. 4/12/06 at 621)

Movant was charged in Counts 2-4 for promotional money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and Counts 5-7 for transactional money laundering in violation of 18 U.S.C. § 1957.  (CR 56)  Counts 2-4 involved payments to Sansea for their recruitment of the victim investor in Movant's fraudulent investment program.  Counts 5-7 involved Movant's withdrawal of the victim's funds from Movant's bank account to purchase her Scottsdale home out of foreclosure.

/ / /

/ / /

## II. Analysis

In the pending § 2255 Motion, Movant raises two claims: (1) ambiguous language in the money laundering statute pursuant to which she was convicted should be construed in her favor; and (2) the district court violated Movant's right to due process by failing to give the jury a special verdict form. (docket # 1)  Respondent asserts that both claims lack merit.  Respondent also argues that review of ground two is precluded because (1) the Ninth Circuit either rejected this claim on appeal, or (2) Movant did not directly raise ground two on direct appeal, and therefore, that claim is procedurally barred.

### A.  Money Laundering Statute

In Ground One, Movant argues that the Government did not prove that the "proceeds" of the "specified unlawful activity" were "profits" as opposed to expenses or "receipts," which Movant argues the Supreme Court now requires in view of its recent ruling in *United States v. Santos*, ___ U.S.___ , 128 S.Ct. 2020, 2027 (2008).

Counts 2, 3, and 4 of the indictment charged Movant with violating the money laundering statute, 18 U.S.C. § 1956 (a)(1)(A)(i). (CR 56; CR 287 at 32, Tr. 4/13/06 at 720) Title 18 U.S.C. § 1956 (a)(1)(A)(i) prohibits conducting a financial transaction with the proceeds of an illegal activity "with the intent to promote the carrying on of" additional illegal activity. *Id*.  With regard to Movant's alleged violation of this statute, the district court instructed the jury that it must find beyond a reasonable doubt that "[f]irst, the defendant conducted a financial transaction involving property that represented the proceeds of wire fraud.  Second, the defendant knew the property represented the proceeds of wire fraud."  (CR 287 at 32, Tr 4/13/06 at 720)

Section 1956(a)(1)(A)(i) does not define the word "proceeds."  When statutory terms are not otherwise defined, they are "generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006).  Movant argues that the ordinary definition of "proceeds" could be either "profits" or "receipts."  She argues that the Supreme Court recently held that "proceeds" should be defined to mean "profits" and not

"receipts." Consequently, Movant argues that the Government failed to prove that her wire fraud resulted in any profits, as opposed to merely receipts. (docket # 1)

In *Santos*, the defendant was convicted of money laundering based on his role in operating an illegal lottery. *United States v. Santos*, __ U.S. ___, 128 S.Ct. 2020 (2008). He supervised the use of funds collected in the lottery to pay the salaries of those working beneath him, as well as to pay the lottery winners. *Santos*, 128 S.Ct. at 2022-23. Santos was convicted under 18 U.S.C. § 1956(a)(1)(A)(i), which prohibits conducting a financial transaction with the proceeds of illegal activity "with the intent to promote the carrying on of" additional illegal activity, which in *Santos* was the continued operation of the lottery. In *Santos*, a plurality of the United States Supreme Court held that the term "proceeds" in the money laundering statute means "profits" and stated that "a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid." *Id*. at 2027. Because *Santos* is a plurality decision, its holding is limited to the more narrow ground on which Justice Stevens decided his concurrence. *Santos*, 128 S.Ct. at 2031. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (stating that "[t]he holding of the Court may be viewed as that position taken by those Members who concurred in the judgment . . . on the narrowest grounds.") Justice Stevens found that the "profits" definition of "proceeds" is limited to money laundering cases involving gambling operations like the one in that case. He explained that, "[i]n other applications of the statute not involving such a perverse result [as in this case], I would presume that the legislative history summarized by Justice Alito [that "proceeds" means "receipts"] reflects the intent of the enacting Congress." *Id*. at 2034 n. 7. Justice Stevens carved out an exception for gambling operations in which "proceeds" means "profits," although the rule is that "proceeds" means "receipts."

The *Santos* court limited its holding to the facts of that case, therefore, it only applies where the predicate specified unlawful activity in a money-laundering case consists of a gambling offense under 18 U.S.C. § 1955. *Santos*, 128 S.Ct. at 2031. Thus, in all other

money-laundering cases, including this case, "proceeds" continues to mean "gross receipts." *See*, *United States v. Everett*, 2008 WL 3843831, * 7 (D. Ariz., August 14, 2008); *U.S. v. Howard,* 2009 WL 205649 (4th Cir., Jan. 29, 2009); (*Bull v. United States*, 2008 WL 5103227, * 8 (C.D.Cal., Dec. 3, 2008) (stating that "given Justice Stevens' opinion that 'proceeds' means 'profits' only for the purpose of money laundering funds from an illegal gambling business, the Court cannot conclude that *Santos* announces a 'new rule' defining the term 'proceeds' to mean 'profits' in all statutes.").

This district has previously concluded that the holding in *Santos* is limited to those money laundering cases where the predicate unlawful activity is gambling. *Everett*, 2008 WL 384381, * 7. Consistent with the prior holding in this district, the undersigned concludes that *Santos* does not apply to this case where the specified unlawful activity is wire fraud, not gambling. Accordingly, the Government was not required to prove that the proceeds in this case were profits.

### B. Due Process Claim - Special Verdict Form

In her second ground for relief, Movant argues that the district court violated her right to due process by refusing to give the jury a special verdict form requiring the jury to find that Movant specifically intended to defraud Gillaspie, rather than to simply defraud an unspecified victim. (docket # 1)  This issue, presented using different language, was decided adversely to Movant in her direct appeal from the judgment of conviction. Accordingly, Respondent asserts that review of Ground Two is precluded because it was rejected on direct appeal.[2]

On direct appeal, Movant argued that the district court erred by instructing the jury on the specific intent requirements of the wire fraud statute. *United States. v. Wilcher*,

---

[2] Although the government refers to Movant's § 2255 motion as successive, it argues that the motion is precluded because the special verdict-form issue was decided previously on direct appeal. (docket # 5 at 6)  Because this is Movant's first § 2255 motion, the government incorrectly characterizes the motion as successive. *See* 28 U.S.C. § 2255.

239 Fed.Appx. 398, 399 (9th Cir. 2007). Movant specifically asserted that the jury should have been instructed that, in order to convict her, it must find that she specifically intended to defraud the victim, Ms. Gillaspie. *See* Appellant's Opening Brief in *United States v. Wilcher*, 2007 WL 111970, at \*\* 22-25. The Ninth Circuit rejected this claim and affirmed Movant's convictions. *Wilcher*, 239 Fed.Appx. at 399.

In the pending § 2255 motion, Movant challenges the district court's failure to give the jury a special verdict form. Respondent argues that, although Movant did not raise this exact claim on direct appeal, her jury-instruction challenge asserted essentially the same issue. The Court agrees. Both on direct appeal and in the pending § 2255 motion, the gravamen of Movant's claim is that the jury was not advised - by a special verdict form or by a specific jury instruction - that in order to convict Movant it must find that she specifically intended to defraud the victim, Mrs. Gillaspie. (*see* Appellant's Opening Brief in *United States v. Wilcher*, 2007 WL 111970, at \*\* 22-25; docket # 1). Although framed differently, both claims assert that the trial erred in failing to advise the jury that, in order to convict Movant, it must find that she had the specific intent to defraud Ms. Gillaspie.[3]

As previously stated, the Ninth Circuit rejected this claim. "[W]hen a federal prisoner presents a claim in a § 2255 petition that he has presented previously, the federal court retains the jurisdiction to refuse to consider the claim on the basis that the prisoner is abusing the writ." *Walter v. United States*, 969 F.2d 814, 816 (9th Cir. 1992). *See also Battaglia v. United States*, 428 F.2d 957 (9th Cir.1979) (stating that a section 2255 proceeding may not be used to relitigate issues which have already been raised on direct appeal). In other words, because the issue raised in Ground Two was previously decided on direct appeal, that claim is not reviewable in this subsequent § 2255 motion. *See Walter v. United States*, 969 F.2d 814, 816 (9th Cir. 1992); *United States v. Currie*, 589 F.2d 993, 995

---

[3] Because the Court concludes that Movant raised the gravamen of her special-verdict form-claim asserted in Ground Two on direct appeal, it need not reach Movant's alternative argument that review of Ground Two is precluded based on Movant's failure to directly raise her special-verdict-form claim on direct appeal.

- 7 -

(9th Cir. 1979); *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972).  The fact that the issue may be couched in different language is of no significance. *Sanders v. United States*, 373 U.S. 1, 16, 83 (1963). This Court is bound by the previous decision and declines to again review this contention. Moreover, the ends of justice would not be served by reconsideration of Movant's claim raised in Ground Two.

In accordance with the foregoing,

**IT IS HEREBY RECOMMENDED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (docket # 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 30th day of April, 2009.

Lawrence O. Anderson
United States Magistrate Judge